UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-cr-80110-BLOOM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JESUS M. ALVAREZ,

    Defendant.
_____/

**ORDER ON MOTION FOR COMPASSIONATE RELEASE**

**THIS CAUSE** is before the Court upon Defendant Jesus Alvarez's ("Defendant") Motion for Compassionate Release, ECF No. [329] ("Motion"). The Government filed its Response, ECF No. [333] ("Response"), to which Defendant filed a Reply, ECF No. [338] ("Reply"). The Court has carefully reviewed the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is denied.

**I.   BACKGROUND**

On January 9, 2015, the defendant plead guilty to conspiring to possess with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846 and § 841 (b)(1)(A) (Count 1). *See* ECF No. [271] at 1. On May 8, 2015, the Court sentenced Defendant to imprisonment for 300 months, followed by a five-year term of supervised release, and a fine of $1,000,000.00. ECF No. [262]. Defendant is currently housed at Loretto Federal Correctional Institution ("Loretto") in Loretto, Pennsylvania.

In the Motion, Defendant requests a reduction in sentence under the compassionate release analysis due to the ongoing COVID-19 pandemic, arguing that his underlying medical conditions put him at an increased risk of serious illness or death and inmates at Loretto are not provided with adequate medical treatment and subjected to abusive conditions. *See* ECF No. [329]. The Government opposes the Motion, arguing that Defendant failed to meet the procedural requirement of exhausting all administrative remedies, and that compassionate release is not warranted in this case because there are no extraordinary and compelling reasons, the § 3553(a) factors do not support a sentence reduction, and Defendant is a danger to the community and has not provided an adequate plan for release. *See* ECF No. [333].

SARS-CoV-2, the novel coronavirus, and COVID-19, the disease it causes, have spread across the world and have impacted every person's life. The United States is currently reporting more confirmed cases of COVID-19 and resulting deaths than any other country, with 97,604,763 confirmed cases and 1,068,667 reported deaths as of November 10, 2022.[1] The COVID-19 pandemic poses a serious danger to society at large. Moreover, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice public health precautions that are otherwise available to the general public, such as social distancing practices.

As a result of this dynamic, unpredictable, and unprecedented situation, former Attorney General William Barr urged the Bureau of Prisons ("BOP") to move vulnerable inmates out of penal institutions and into home confinement, where appropriate. *See* Mem. from Attorney Gen. William Barr for Dir. of Bureau of Prisons re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download ("Memorandum"). The Memorandum identifies several facilities that have been particularly

---

[1] *COVID Data Tracker*, Centers for Disease Control and Prevention, https://covid.cdc.gov/covid-data-tracker/#global-counts-rates (last updated November 10, 2022).

affected and should be given priority in the BOP's consideration of implementing home confinement, including FCI Oakdale, FCI Danbury, and FCI Elkton. *Id.* at 1. The former Attorney General made the express finding that extant emergency conditions are materially affecting BOP functioning and directed the BOP to immediately maximize transfers to home confinement for all eligible inmates at the specifically named facilities and other similarly situated facilities where COVID-19 is materially affecting operations. *Id.* The Memorandum further directs the BOP to review all inmates who have COVID-19 risk factors, as established by the Centers for Disease Control and Prevention ("CDC"), to determine their suitability for home confinement, while also emphasizing the importance of protecting the public from individuals who may pose a danger to society, and recognizing the need to avoid over-burdening law enforcement with "the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released . . . and that they will not return to their old ways as soon as they walk through the prison gates." *Id.* at 2-3. Finally, the Memorandum stresses the need for careful and individualized determinations regarding the propriety of releasing any given inmate to home confinement and discourages indiscriminate releases. *Id.* at 3.

## II. LEGAL STANDARD

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, 805 F. App'x 727, 729 (11th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, 800 F. App'x 742, 745 (11th Cir. 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir. 2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

> The compassionate release provision, § 3582(c)(1)(A), states:
>
> (c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
> 	(i) extraordinary and compelling reasons warrant such a reduction . . . .
> 	. . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

> The existing policy statement provides that
>
> > Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
> >
> > (1)(A) extraordinary and compelling reasons warrant the reduction; or

> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S. Sent'g Guidelines Manual § 1B1.13 (U.S. Sent'g Comm'n 2018). Although the existing policy statement still assumes compassionate release "may be granted only upon motion by the Director of the Bureau of Prisons," the United States Court of Appeals for the Eleventh Circuit recently decided that § 1B1.13 is applicable for all § 3582(c)(1)(A) motions, whether filed by the BOP or by a defendant directly, and that courts do not have discretion to develop "other reasons" to justify a reduction in a defendant's sentence. *United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021), *cert. denied*, 211 L. Ed. 2d 363 (2021). Accordingly, the Court must apply § 1B1.13 to determine whether extraordinary and compelling circumstances exist.

Moreover, § 3582 delineates how this Court should analyze whether a defendant is entitled to a sentence modification.

> *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id*. *Third*, the Court should turn to the "extraordinary and compelling reasons" test . . . . And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id*.

*United States v. Stuyvesant*, 454 F. Supp. 3d 1236, 1238 (S.D. Fla. 2020).

Thus, in order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the

relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted"). With these standards in mind, the Court considers the instant Motion.

### III. DISCUSSION

#### A. Exhaustion of administrative remedies

As an initial matter, the Government argues that Defendant failed to establish that he exhausted his administrative remedies with the BOP. ECF No. [333] at 4-5. Defendant attached to his Motion a copy of the Inmate Request for Compassionate Release Consideration Form ("Request Form") he submitted to the warden and a letter of denial signed by the acting warden. *See* ECF No. [329] at 133-134. In the Request Form, Defendant listed "Death or Incapacitation of the Family Member Caregiver where you are the only caregiver for your minor child" as the compelling circumstance for release which is different than the COVID-19 and prison condition related grounds raised in the Motion. *See* ECF No. [329] at 133. The Government argues that Defendant has not given his warden the opportunity to consider the reasons brought forth in the Motion as grounds for compassionate release and, as such, has failed to properly exhaust his administrative remedies. ECF No. [333] at 4-5 (citing *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). In Reply, Defendant argues that he did comply with the exhaustion requirements, but that the form had limited options that did not include COVID-19 or Prison

Conditions. ECF No. [338] at 4-5. Defendant also contends that he was instructed by the warden not to file multiple requests. *Id.* at 5, 21.

In *Williams* the Seventh Circuit held that because defendant did not ask the Bureau of Prisons to move the district court for his release based on the presence of COVID-19 at his prison and his risk of infection, his counsel could not properly file a motion for compassionate release on that basis. *Williams*, at 704. The Court agrees that the denial of Defendant's request for compassionate release premised upon grounds not raised in the current Motion cannot satisfy the exhaustion requirement. *See United States v. Gonzalez*, 17-CR-60223, 2021 WL 4066897 (S.D. Fla. Sept. 7, 2021) (This Court previously held that where a request for compassionate release was submitted based on obesity, it did not satisfy the exhaustion requirement for the Motion for Compassionate Release on the basis of familial circumstances). The failure to exhaust BOP remedies is a sufficient basis to deny the Motion. However, even if Defendant had satisfied the exhaustion requirement, as explained below, he fails to demonstrate that extraordinary and compelling circumstances exist in this case.

     **B.**     **Extraordinary and compelling circumstances**

**i.**     **Medical conditions**

First, Defendant's medical records indicate that he has already contracted COVID-19, and there is no evidence that he is suffering any lasting effects. *See* ECF No. [329] at 57-58. Defendant's medical records also indicate that he has been vaccinated against COVID-19, *see* ECF No. [329] at 73, and while the vaccine does not guarantee that he cannot contract the virus again, it significantly decreases the likelihood that he will.

Second, recently updated CDC guidelines indicate that the following health conditions can make adults of any age more likely to become severely ill due to COVID-19: cancer; chronic

kidney disease; chronic liver disease; chronic lung diseases, including asthma (moderate to severe); cystic fibrosis; dementia or other neurological conditions; diabetes (type 1 or type 2); disabilities such as Down syndrome; heart conditions, such as heart failure, coronary artery disease, cardiomyopathies, or hypertension; HIV infection, immunocompromised state (weakened immune system); mental health conditions; overweight and obesity; pregnancy; sickle cell disease or thalassemia; current or former smoking; solid organ or blood stem cell transplant; stroke or cerebrovascular disease; substance use disorders; and tuberculosis.[2] In the Motion, Defendant asserts that he suffers from multiple health conditions that are risk factors which qualify him for compassionate release or home confinement under the Cares Act including obesity, severe sleep apnea, esophageal reflux, hyperlipidemia, hypertension, recurrent shoulder dislocation, and metabolic syndrome which puts him at risk for diabetes. ECF No. [329] at 14, 19-20. The Government responds that Defendant's medical records illustrate that he is receiving robust medical regimens to treat many of his complained of conditions and that there is no indication in Defendant's medical records that he has been diagnosed with hypertension, only that he reported a history of hypertension. ECF No. [333] at 7. Moreover, while the claimed health conditions might place him at high risk due to COVID-19, the medical records reveal that Defendant had COVID-19 in December of 2020 and the medical records do not reflect that he is suffering any long-term effects.

Third, in keeping with § 1B1.13,[3] in order for Defendant's medical conditions to provide

---

[2] *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 2, 2022).

[3] Recent Eleventh Circuit precedent in *United States v. Bryant* makes clear that this Court is strictly confined to consideration of only the circumstances described in the Sentencing Guidelines in determining whether extraordinary and compelling circumstances exist. 996 F.3d at 1248 (11th Cir. 2021).

justification for compassionate release, the Court must find that Defendant is either suffering from a terminal illness, or that his serious physical or medical condition, or serious functional or cognitive impairment, substantially diminishes his ability to provide self-care and from which he is not expected to recover. *See* U.S. Sent'g Guidelines Manual § 1B1.13, cmt. 1(A). Upon review of the Motion and medical records submitted, the Court concludes that the record does not support either finding under the Sentencing Guidelines.

Fourth, "the BOP Director has not found COVID-19 alone to be a basis for compassionate release." *United States v. Harris*, No. 2:12-cr-140-FtM-29DNF, 2020 WL 1969951, at *2 (M.D. Fla. Apr. 24, 2020) (citing *United States v. Eberhart*, No. 13-cr-313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence . . . .")). In sum, while the Court is certainly sympathetic to Defendant's concerns regarding COVID-19, the medical records in this case reflect that Defendant has access to adequate medical treatment, and the BOP can provide treatment for any potential COVID-19 related issues.

ii.   Abusive conditions

Defendant also raises throughout his Motion claims that the lack of adequate medical treatment and abusive conditions at Loretto constitute extraordinary and compelling reasons for the Court to reduce his sentence. ECF No. [329]. Defendant explains "the BOP has been providing him with inadequate care with respect to diet, medical treatment, clothing, rehabilitation, and living conditions." *Id.* at 10. Defendant also complains that at Loretto medical providers do not administer antiviral medication, allowing it to expire, and that Loretto policy requires prisoners, including Defendant, who need CPAP treatment for sleep apnea to be moved to the Special

9

Housing Unit, or alternatively forfeit "life-saving treatment" *Id*. at 14, 17-18. Finally, Defendant complains of abusive conditions, including living in an environment "where drug use and access to drugs is off the charts, violence and brutality are around every corner, and intercourse between males is rampant." *Id*. at 23.

Pursuant to U.S.S.G. § 1B1.13(1)(A), "the court may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that [e]xtraordinary and compelling reasons warrant the reduction." U.S.S.G. § 1B1.13(1)(A). The Notes provide, in pertinent part, that extraordinary and compelling reasons exist under any of the circumstances set forth below:

> 1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
>> (A) **Medical Condition of the Defendant.**—
>> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> (ii) The defendant is—
>>
>>> (I) suffering from a serious physical or medical condition,
>>>
>>> (II) suffering from a serious functional or cognitive impairment, or
>>>
>>> (III) experiencing deteriorating physical or mental health because of the aging process,
>>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
>> (B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

Case No. 14-cr-80110-BLOOM

> (C) **Family Circumstances.**—
>
>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>
>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, cmt. n.1.

Here, in arguing that extraordinary and compelling reasons exist, Defendant articulates many of his grievances with the BOP and Loretto. The Notes, however, specifically refer to personal characteristics of defendants, such as a medical condition, age, or family-related concerns as circumstances that warrant a finding of extraordinary and compelling reasons. Defendant's proffered justification for a sentence reduction in this case lies far afield from any such considerations. Indeed, Defendant essentially argues that poor medical care and unpleasant living conditions are extraordinary and compelling reasons warranting early release, but Defendant provides no authority, nor has the Court found any, to support relief on those grounds pursuant to § 3582. The Court therefore finds that Defendant has not demonstrated that extraordinary and compelling reasons exist where the basis for his request is not related to the relevant considerations set forth in § 1B1.13.

Defendant has failed to establish extraordinary and compelling circumstances that would warrant early release.[4]

---

[4] Because the Motion fails to establish any extraordinary and compelling circumstances under the compassionate release analysis, the Court need not address the remaining considerations under § 3553(a) or § 3142(g).

11

Case No. 14-cr-80110-BLOOM

Based on the discussion above, the Court concludes that Defendant has not satisfied his burden of demonstrating that compassionate release or a reduction in his sentence is appropriate here.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [329]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 10, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Jesus M. Alvarez
53081-004
Loretto Federal Correctional Institution
Inmate Mail/Parcels
Post Office Box 1000
Loretto, PA 15940
PRO SE